WILLIAM S. MULLER, Respondent, v. WILLIAM C. RALSTON and CHARLES H. GODDARD, Appellants.

First Department, January 16, 1920.

Sale — action for breach of contract to purchase stock sold on curb market — complaint alleging refusal of defendants to accept stock tendered and also decision of rights of parties by curb market association — principal and agent — when arbitration binding upon agent but not upon undisclosed principal.

Action to recover damages caused by the refusal of the defendants to accept and pay for certain stock which was ordered of the plaintiff and also of the plaintiff's assignor by the defendants, one of whom was a broker who

ordered the stock for the other defendant, an undisclosed principal. The complaint contains three counts, the first alleging in substance that the plaintiff contracted to sell to the defendants a certain number of shares of said stock on the New York " curb market " which shares at the time of the sale were in Chicago and did not arrive in New York for delivery until three days later at which time defendants refused to accept the same and they were sold by the plaintiff at a loss for the account of the defendants. The second count alleges a similar transaction by the defendants with the plaintiff's assignor, and the third count alleges the same facts and sets out in addition that the plaintiff, his assignor and the defendants were all members of an association known as the New York Curb Market which regulated the business of its members in unlisted securities and the rules of which provided for arbitration of differences arising between members; that the differences arising between the plaintiff and the defendants were submitted to such arbitration on which the defendants claim that the plaintiff was indebted to them for failure to deliver said stock and that a finding of the arbitrators in favor of the plaintiff was affirmed by a board of the association authorized to determine appeals and that the defendants were ordered to receive the stock tendered by the plaintiff but refused to accept the same. On the trial there was an issue of fact as to whether the stock was ordered for regular delivery which meant delivery upon the following day or was ordered for " delayed delivery " which meant delivery within a reasonable time after the sale. On all the evidence,

*Held,* that the defendant, who was the undisclosed principal in the transaction, cannot be held for damages under the third count of the complaint as he was not a member of the New York Curb Market, but was an outsider ordering stocks through the other defendant as his agent and broker, and not having been a party to the arbitration proceedings was not bound by the award made therein which was binding only upon the agent ;

That, in any event, the defendants as agent and undisclosed principal cannot be held jointly liable in damages, and that a judgment against the agent should be affirmed while the judgment against the undisclosed principal should be reversed and the complaint dismissed as to. him.

APPEAL by the defendants, William C. Ralston and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of April, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 28th day of April, 1919, denying defendants' motion for a new trial made upon the. minutes.

*James L. Dowsey* of counsel [*Dowsey, Parsons & Burton,* attorneys], for the appellant Ralston.

*John C. Tomlinson* of counsel [*Tomlinson, Coxe & Tomlinson,* attorneys], for the appellant Goddard.

*William F. Unger* of counsel [*Samuel Rubin* with him on the brief; *Goldman & Unger,* attorneys], for the respondent.

MERRELL, J.:

The defendants herein have separately appealed from a judgment rendered at Trial Term of the Supreme Court, upon the verdict of a jury in favor of the plaintiff and against the defendants jointly for the sum of $2,836.20, damages and costs.

The action was brought by the plaintiff to recover damages claimed to have been sustained by him by reason of the failure of the defendants to accept 800 shares of the American Druggists Syndicate stock, known as A. D. S. stock, which the plaintiff claims the defendants ordered of plaintiff and of plaintiff's assignor, C. W. Pope & Co. The complaint contains three counts. In the first count the plaintiff alleges that on January 6, 1917, he contracted to sell to defendants 200 shares of said stock on the New York Curb Market at $15 per share, or amounting in the aggregate for said 200 shares to $3,000; that the said 200 shares of stock thus contracted to be sold to the defendants were at the time of the sale in the city of Chicago, and that the same did not arrive in New York for delivery until three days later, or January 9, 1917; that upon the arrival of said stock plaintiff advised defendants thereof, but that the defendants refused to accept the same; that thereupon the plaintiff sold said stock for the account of the defendants for $2,400, that being the best price obtainable therefor, leaving a balance due plaintiff as damages by reason of the refusal of the defendants to accept said stock (after deducting a dividend of $80 which he received thereon) of $520.

By the second count the plaintiff alleges that C. W. Pope & Co. was a copartnership, and that said copartners on the dates of January 5, 6 and 8, 1917, sold to the defendants 600 shares of the American Druggists Syndicate stock at a price aggregating $8,937.50; that upon the arrival of said stock in New York from Chicago the defendants refused to accept the same and the same was resold by C. W. Pope &

Co. at a loss, after deducting dividends, of $1,871.25; that C. W. Pope & Co. afterwards assigned to plaintiff their claim therefor against defendants. The amounts due upon these transactions between plaintiff, personally, and the defendants and the plaintiff's assignor and the defendants amounted in the aggregate to $2,391.25, for which amount judgment was demanded with interest.

By a third count of the complaint the plaintiff realleges the allegations contained in the first two counts and alleges that the plaintiff, C. W. Pope & Co. and the defendants were all members of an association known as the New York Curb Market; that the object of said association was to furnish a constitution, rules, regulations, penalties and facilities for the transaction of business by its members as dealers or brokers in securities not listed in any department of the New York Stock Exchange, and that the stock in question was one of such stocks dealt in by the New York Curb Market; that all dealings between the members of said association were subject to said constitution, manual, etc.; that among other things, the constitution of said association provided for an arbitration committee to decide differences arising from contracts subject to the rules of the association; that differences between the plaintiff and his assignor C. W. Pope & Co. and the defendants herein arose from said transactions with reference to said 800 shares of stock; that the defendants claimed the plaintiff was indebted to them in the sum of $75 for failure to deliver the 200 shares of stock which he had agreed to sell them, and which they claimed afterwards to have bought in at a loss, and that C. W. Pope & Co. was likewise indebted to them in the sum of $112.50 arising from failure to deliver the 600 shares of stock which they contracted to sell to the defendants; that the plaintiff and C. W. Pope & Co. claimed defendants were obliged to accept and pay for said stock. The plaintiff further alleges that the matters in dispute between said members of the New York Curb Association were duly presented to and heard by the arbitration committee and that thereafter a decision was rendered dismissing the complaint of the defendants and directing W. C. Ralston & Co., of which the defendant W. C. Ralston was the head, to receive from plaintiff and from Pope & Co.

the said shares of stock; that defendants appealed from said decision of the arbitration committee to the board of representatives of said association, an appellate tribunal created by the rules of the association, and that the decision of the arbitration committee was sustained by said appellate tribunal; that thereafter the plaintiff and Pope & Co. tendered to the defendants the aforesaid stock, but that the defendants refused to accept the same, and that thereafter and commencing on February 28, 1917, plaintiff and Pope & Co. sold for the account of the defendants the said stock at a loss, after deducting dividends, of $2,391.25, and that Pope & Co. had assigned their claim to the plaintiff.

Separate answers of the defendants put in issue substantially all of the allegations of the complaint.

The action was tried and a verdict rendered for the plaintiff against both defendants for the damages set forth in the complaint, with interest, amounting to $2,678.20. Defendants moved to set aside the verdict upon the usual grounds, which motion was denied.

It was the contention of the plaintiff upon the trial that the sale of this stock was upon what was known as " delayed delivery," which meant that under the contract for the sale of the 800 shares of stock, the plaintiff or seller was to have a reasonable time to deliver the shares. The defendants claim that the stock was purchased for immediate delivery, that is, delivery on the day following the purchase, by spot payment of cash therefor. The question as to whether or not the defendants were justified in refusing to accept the stock in question three days after its purchase depended on whether or not the stock was sold in the parlance of the curb market, " regular way," which meant for delivery on the following business day after the sale, or for " delayed delivery," or seven days, which meant within a reasonable time after the sale. As this stock was in Chicago at the time of the sale, it was not susceptible of delivery " regular way," and a sharp question of fact arose upon the evidence as to just what the contract was, whether the understanding between the parties was that the stock should be sold " regular way," *i. e.,* for delivery on the following business day, or was sold " delayed delivery," which meant upon its arrival from

Chicago. The learned court charged the jury that if they found that the stock was sold " regular way " they must bring in a verdict in favor of both defendants, but if they found the stock was sold " delayed delivery " then they might find that the defendants had unjustifiably refused to accept the same and were liable for damages arising from such refusal. The evidence was conflicting upon the issue as to the manner in which said stock was sold. The defendant Ralston claimed that the stock was bought " regular way," while the plaintiff and a witness by the name of Schuman, who represented Pope & Co. in the transaction, testified that the sale was for " delayed delivery." The jury by their verdict found for the plaintiff, that the sale was " delayed delivery."

The purchase of these 800 shares of stock was negotiated by the defendant Ralston, a curb broker, representing the defendant Goddard, who was the president of the American Druggists Syndicate and who was purchasing largely of the shares of stock of said syndicate. It appeared that up to and about the time of these transactions Goddard had purchased through Ralston 7,000 shares of the stock of said syndicate. A letter was introduced in evidence from Goddard to his broker, the defendant Ralston, under date of December 21, 1916, in which he stated that he wanted it distinctly understood that from and after that date all purchases of stock made for his account were made only on the regular terms which provide that the stock must be delivered not later than the day following the purchase. The court held and instructed the jury, in view of such restriction placed upon Ralston by Goddard, that Goddard could not be held under either of the first two counts of the complaint, but could only be held upon the theory that he had submitted his claims with reference to said stock to the board of arbitration of said curb association and was bound by their determination with reference thereto. The court instructed the jury that if Goddard never requested his broker, Ralston, to submit the matters in dispute to arbitration there could be no recovery against the defendant Goddard, and that said defendant could only be held upon the theory that he requested and directed Ralston to submit these matters to this board of arbitration.

I do not think, under the evidence, that Goddard can be held for damages upon the theory thus suggested by the court. Goddard was not a member of or in any manner connected with the New York Curb Market. He was an outsider desiring to acquire stocks offered for sale on said market, and, for the purpose of procuring the same, employed the defendant Ralston as his broker and agent. Goddard was not a party to the arbitration proceedings nor did he participate therein, and the award which was made by the arbitration committee was against Ralston's firm alone. While it appears from the testimony of Ralston that he was instructed by his principal, Goddard, to submit the claims for damages to the arbitration committee of said association Goddard denies giving Ralston such instructions. It is quite evident that Goddard must have understood that such authority only related to the claim for damages sustained by him in " buying in " said 800 shares on default of plaintiff and his assignor in making " regular delivery " of the stock purchased. I do not think there was enough of such authorized submission of defendant Goddard's claim for damages to the arbitration committee to bind said defendant by the action of the committee. I think the evidence presented upon the trial was sufficient to sustain the recovery against the defendant Ralston, but that such evidence was insufficient to connect the defendant Goddard.

In any event, the defendants cannot be held jointly liable to respond to the plaintiff in damages. Either Ralston, the operator, or Goddard, the undisclosed principal, can be held. There is no ground of joint liability.

The judgment and order appealed from should be affirmed as to the defendant, appellant, Ralston, and as to the defendant, appellant, Goddard, the judgment and order should be reversed, with costs, and the complaint, as to him, dismissed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and PHILBIN, JJ., concur.

Judgment and order affirmed as to defendant Ralston, and reversed, with costs, and complaint dismissed, with costs, as to defendant Goddard. Settle order on notice.